UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| INELA ROKO CALA,<br><br>             Plaintiff,<br><br>    v.<br><br>MOORINGS PARK COMMUNITY HEALTH, INCORPORATED,<br><br>             Defendant. | Case No.<br><br>**COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff INELA ROKO CALA, by and through her attorneys, BOATMAN RICCI, PA, as and for her Complaint herein, alleges as follows:

**INTRODUCTION**

1. Plaintiff is a wife and mother with a young family. She helped support her family by working in the marketing department of a senior citizen community close to her home. She was a dutiful employee with an unblemished record of employment. Plaintiff suffers from a medical condition that causes her body to have a potentially fatal reaction to vaccination. As a result, declines the flu shot each year and has obtained a medical exemption from her employer's requirement that all employees receive the flu vaccine. When COVID-19 came upon us, employees including Ms. Cala were permitted to work from home. When vaccines were rolled out, the employer implemented a vaccine mandate, requiring all employees to be inoculated against COVID-19. As she had done with the flu vaccine for the entire period of her employment with Defendant, Ms. Cala submitted a request for medical exemption, which was signed off on by her physician. Defendant denied the exemption request. Ms. Cala is also a devout Christian who sincerely and deeply holds certain religious beliefs that dictate against vaccination. On that basis, Plaintiff submitted a request for a religious exemption from her employer's vaccine mandate,

which was summarily and hastily denied without inquiry or exploration of possible reasonable accommodation. Defendant then terminated Plaintiff's employment. Defendant's termination of Plaintiff's employment violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, Florida Statutes Chapter 760 and all other applicable provisions of law, as described hereinbelow.

## PARTIES

2.  Plaintiff INELA ROKO CALA (hereinafter referred to as "Ms. Cala") is a former employee of Defendant MOORINGS PARK COMMUNITY HEALTH, INCORPORATED, a practicing Christian, and a person with a disability as defined by the American with Disabilities Act. Ms. Cala is a resident of Collier County, Florida.

3.  Defendant MOORINGS PARK COMMUNITY HEALTH, INCORPORATED (hereinafter referred to as "Defendant", "Employer", or "Moorings Park") is a private residential community for senior citizens. Moorings Park employs approximately 850 people. Defendant is located in Collier County, Florida. Upon information and belief, Defendant is a corporation, duly incorporated pursuant to the laws of the State of Florida.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States including 42 U.S.C. §2000-e, et seq..

5.  This Court has jurisdiction over Plaintiffs' pendant state law claims pursuant to 28 U.S.C. §1367.

6.  Venue is proper in this District pursuant to 28 U.S.C. §1391 based on the location of Defendant and the location in which the events giving rise to the suit took place.

## ALLEGATIONS OF FACT

7.    Ms. Cala was employed by Defendant as a Marketing Community Liaison from June 6, 2016 until she was terminated on or about September 28, 2021.

8.    Ms. Cala began her employment with Defendant in March 2014 and was thereafter promoted.

9.    On August 5, 2021, Moorings Park issued a memo to its employees stating that it had adopted a COVID-19 vaccination policy. Although the memo stated that it was the intent of Employer that the policy comply with applicable federal law and EEOC guidelines, the policy violated the law both on its face and as applied. A copy of the memo setting forth the policy is filed herewith as **Exhibit "A"** and incorporated herein by reference.

10.   Pursuant to the directives set forth in the policy, Ms. Cala timely submitted a "Medical Exemption Accommodation Request" to Defendant's Human Resources Department. This form was completed and signed by a medical doctor.

11.   Ms. Cala had every reason to believe that her request would be granted since she had maintained a longstanding exemption from her employer's annual flu shot requirement, and the basis of that exemption request and the request to be exempted from the COVID-19 vaccination requirement are the same.

12.   On August 30, 2021, Defendant responded to Ms. Cala's exemption request in writing stating, in sum and substance, that additional information was required in order for Defendant "to determine if [Plaintiff's] medical condition is considered a medical contraindication which precludes [Ms. Cala] from receiving any/all vaccinations for COVID-19."

13.   Also on August 30, 2021, Moorings Park sent a letter to its residents advising them of a possible staff shortage due to the implementation of its vaccine mandate, and requesting residents

to notify Moorings Park if they consent to care being provided by a person who has been granted a medical or religious exemption to the mandate and is therefore unvaccinated.

14. Upon information and belief, many residents indicated that they would provide such consent.

15. Defendant set a deadline of September 7, 2021 for Ms. Cala's medical provider to provide the requested information on a form provided the Employer.

16. The requested additional information was timely provided by the same medical doctor who completed the initial exemption request form.

17. Having not heard anything further in response to her request for an accommodation due to her disability/medical condition, Ms. Cala sent an email to her Employer (specifically, the Director of Human Resources) on September 16, 2021.

18. Defendant then responded to Ms. Cala by telephone and told her that her request for a medical exemption was denied.

19. The reason proffered by Defendant for the denial was that an accommodation could not be offered because Ms. Cala comes into contact with residents in the course of her job.

20. Ms. Cala asked why she could not be accommodated by being allowed to work from home, which she had done earlier during the pandemic period. Defendant did not respond to this inquiry.

21. Ms. Cala advised Defendant that she had previously contracted and recovered from COVID-19, and therefore has greater protection from contracting COVID-19 than that provided by the vaccine. Defendant was unwilling to factor that into its decision regarding Plaintiff's continued employment and/or request for accommodation.

22. The day following the telephone conversation, Ms. Cala sent an email to Defendant requesting that the denial be issued in writing, and seeking clarification of the basis for the denial. A written denial was issued pursuant to her request.

23. In the written denial, Defendant did not dispute that Ms. Cala's medical condition/disability warranted exemption from the vaccine requirement, but asserted that an accommodation was impossible because "non-vaccinated partners in [Plaintiff's] position would present a direct threat to residents and partners". The denial letter further opined, "We have evaluated the duties of [Plaintiff's] job and have determined that exemption from Mooring Park's COVID-19 vaccination policy would place an undue burden on Moorings Park thus we are unable to accommodate your request." By that letter, Defendant gave Ms. Cala an ultimatum: get vaccinated by September 20, 2021 or resign.

24. On September 19, 2021, Plaintiff submitted a request for religious exemption from the Employer's vaccine mandate. Ms. Cala is medically unable to be vaccinated, but she also has sincere, deeply held religious beliefs that dictate against putting harmful foreign substances into her body, which scripture dictates is the temple of the Holy Spirit. The exact nature of the religious exemption is detailed in her religious exemption request letter.

25. On September 20, 2021 – the deadline imposed by the Employer for Plaintiff to be vaccinated – Plaintiff inquired about the status of her request for religious exemption. In response, Employer asked Ms. Cala via email if she is available for a telephone call. The call subsequently occurred, during which Defendant advised Ms. Cala that her religious exemption request is denied.

26. During this call, Ms. Cala requested that Defendant put the denial of her request for religious exemption in writing. Defendant declined this request.

27. On September 24, 2021, Ms. Cala's direct supervisor requested to meet with her. During the meeting, Defendant advised Ms. Cala that she is terminated effective September 30, 2021.

28. Notably, also present in the meeting with Plaintiff and her supervisor was the clinical supervisor, Olesya Garshina. Upon information and belief, Ms. Garshina is not vaccinated against COVID-19 pursuant to an approved medical exemption. Ms. Garshina is a nurse who has regular contact with patients.

29. By letter dated September 28, 2021, Defendant officially terminated Ms. Cala's employment. The reason given for the termination was Plaintiff's "failure to comply with Moorings Park's COVID-19 Vaccination Policy".

30. Ms. Cala's annual base salary at the time of her termination was $77,179. She also received an annual bonus of approximately $20,000.

31. Other components of Ms. Cala's compensation package that she lost due to her unlawful termination were health insurance, dental insurance, vision insurance, health savings account match of up to $3,000, short and long term disability insurance, paid time off (she was not even paid out for her accrued time), and 6% match to 401K contribution every pay period.

32. In November 2021, Governor Desantis signed into law Section 381.00317, Florida Statutes, a law prohibiting private employers from enacting COVID-19 mandates for their employees without providing certain enumerated exemptions. The statute provides (in pertinent part):

> A private employer may not impose a COVID-19 vaccination mandate for any full-time, part-time, or contract employee without providing individual exemptions that allow an employee to opt out of such requirement on the basis of medical reasons, including, but not limited to, pregnancy or anticipated pregnancy; religious reasons; COVID-19 immunity; periodic testing; and the use of employer-provided personal protective equipment…

This statute served to clarify and bolster the protections already afforded by the Americans with Disabilities Act, Title VII, and the Florida Civil Rights Act.

33. Upon the enactment of this statute, Defendant should have reinstated Plaintiff's employment since it was undeniable at that point that it was required to grant Plaintiff her requested exemption to the vaccine mandate. However, Defendant continued to flout the law.

34. Plaintiff filed a Complaint with the Florida Commission on Human Relations was issued a Determination and Notice of Rights dated July 11, 2022. This letter notes that the U.S. Equal Employment Opportunity Commission has adopted the state agency's findings and that it (the Determination and Notice of Rights) takes the place of the Right to Sue letter typically issued by the EEOC. This document is filed herewith as **Exhibit "B"**.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### TITLE I OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §12101 et seq.)

35. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 above as though fully set forth herein.

36. Plaintiff is a qualified person with a disability as defined by the Americans with Disabilities Act.

37. Plaintiff's employer had an ongoing obligation to afford plaintiff a reasonable accommodation so that she could continue her employment with in spite of being afflicted with a disability.

38. Defendant's claim of undue hardship was reached is unsupported by any facts or investigation into possible accommodations and, therefore, untenable. Plaintiff's job duties consisted of public relations and marketing, which she performed typically electronically or over the telephone. Further, Plaintiff performed these duties exclusively from home for several months

at the Employer's instruction during the height of the pandemic period. It is clear that Defendant would not have suffered undue hardship by affording the requested accommodation to Plaintiff.

39. In fact, Plaintiff worked exclusively from home for four months (April through July 2020) and was able to participate in all meetings virtually and met or exceeded all of her sales goals during this time. There is no reason the same accommodation could not have been provided following implementation of the vaccine mandate.

40. Defendant's failure to accommodate Plaintiff and subsequent termination of her employment constitute unlawful acts of discrimination against a person with a disability in violation of the Americans with Disabilities Act.

## AS AND FOR A SECOND CAUSE OF ACTION
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §§2000e-2
FOR EMPLOYMENT DISCRIMINATION ON THE BASIS OF RELIGION
(Failure to Accommodate)

41. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 above as though fully set forth herein.

42. The denial of Plaintiff's request for religious accommodation and subsequent termination were unlawful acts of discrimination and retaliation in violation of the applicable provisions of Title VII of the Civil Rights Act of 1964.

## AS AND FOR A THIRD CAUSE OF ACTION
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §§2000e-2
FOR EMPLOYMENT DISCRIMINATION ON THE BASIS OF RELIGION
(Disparate Treatment)

43. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 and 41 above as though fully set forth herein.

44. Plaintiff is aware of at least two Moorings Park employees that have job titles/duties similar to hers whose requests for exemption from Employer's vaccine mandate were granted by Defendant.

45. The disparate treatment to which Plaintiff was subjected on the basis of her religion evinces Defendant's hostility towards persons of faith and constitutes unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964.

### AS AND FOR A FOURTH CAUSE OF ACTION
FLORIDA CIVIL RIGHTS ACT OF 1992 (§760.01, Fla. Stat.)

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34, 42 and 44 through 45 above as though fully set forth herein.

47. In addition to violating the federal statutes enumerated above, the Defendant's actions alleged herein violate the Florida Civil Rights Act insofar as Defendant discriminated against Plaintiff on the basis or her disability and religion.

### AS AND FOR AN FIFTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 above as though fully set forth herein.

49. Defendant deliberately terminated Plaintiff's employment and denied her requests for medical and religious exemptions despite knowing and previously acknowledging that she had a valid medical reason for not being vaccinated and that her religious beliefs dictating against vaccination are sincere and deeply held.

50. Defendant knew or should have known that this action would cause Plaintiff mental suffering.

51. Moreover, Defendant's discriminatory treatment of Plaintiff and its conclusory assertion of undue hardship without any inquiry or investigation was outrageous conduct under the law.

52. As a result of the trauma of being terminated from her employment for no fault of her own and the feelings of loss and inadequacy for not being able to contribute to the financial support of her young family, Ms. Cala has suffered anxiety, depression and panic attacks. The situation grew so dire that for the first time in her life, Ms. Cala made the difficult decision to take prescribed medication to treat her depression and anxiety.

WHEREFORE, Plaintiff respectfully requests that the Court grant her relief as follows:

(i) Issue an Order directing Defendant to reinstate Plaintiff to her prior position of employment; and,

(ii) Retroactively award Plaintiff all salary, other compensation, and benefits appurtenant to her position of employment; and,

(iii) Award compensatory damages of the Fifth Cause of Action in the amount of Five Hundred Thousand Dollars; and,

(iv) Award punitive damages to Plaintiff in the amount of Five Hundred Thousand Dollars; and,

(v) Award plaintiff counsel fees and costs associated with this action; and,

(vi) Such other and further relief as this Court may deem just and proper.

Dated: October 7, 2022

BOATMAN RICCI

_s/_ James A. Boatman, Jr._____
    James A. Boatman, Jr., Esq.
    Fla. Bar No. 130184
    3021 Airport-Pulling Rd. N., Suite 202
    Naples, Florida 34105
    Email: CourtFilings@boatmanricci.com
    (239) 330-1494 – Telephone
    Attorneys for Plaintiff