UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

INELA ROKO CALA,

      Plaintiff,

v.                                  Case No: 2:22-cv-635-JES-NPM

MOORINGS   PARK   COMMUNITY
HEALTH, INCORPORATED,

      Defendant.

_____

## OPINION AND ORDER

    This matter comes before the Court on review of defendant's Motion to Dismiss and Motion to Strike (Doc. #7) filed on November 2, 2022, which was supplemented[1] (Doc. #13) on November 8, 2022. Plaintiff filed a Response in Opposition (Doc. #14) on November 23, 2022. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

    Plaintiff Inela Roko Cala's (Plaintiff or Ms. Cala) Complaint makes the following factual allegations: Ms. Cala was employed by defendant Moorings Park Community Health, Inc. (Defendant or Moorings Park) beginning in March 2014, and worked as a Marketing

---

[1] Defendant supplemented its Motion in order to add a 3.01(g) certification in compliance with this Court's local rules. See M.D. Fla. R. 3.01(g).

Community Liaison from June 6, 2016 until she was terminated on or about September 28, 2021. (Doc. #1, ¶¶ 7-8.)

On August 5, 2021, Moorings Park issued a memo to its employees stating that it had adopted a COVID-19 vaccination policy (the Policy) which would be implemented in accordance with federal law and Equal Employment Opportunity (EEOC) guidelines. (Id., ¶ 9.)  Pursuant to the directives set forth in the Policy, Plaintiff submitted a "Medical Exemption Accommodation Request" to Moorings Park's human resources department, which was signed and completed by a medical doctor. (Id., ¶ 10.)  Plaintiff, who had maintained a longstanding exemption from Moorings Park's annual flu shot requirement[2], believed her COVID-19 vaccination exemption request would be granted since the basis of the exemption request and the request to be exempted from the flu shot were the same. (Id., ¶ 11.)

On August 30, 2021, Moorings Park responded to Ms. Cala's exemption request by stating that additional information was required in order for Defendant "to determine if [Plaintiff's] medical condition is considered a medical contraindication which precludes [Plaintiff] from receiving any/all vaccinations for

---

[2] Plaintiff suffers from a medical condition that causes her body to have a potentially fatal reaction to vaccination. (Doc. #1, ¶ 1.) In light of her condition, Plaintiff had declined the flu shot each year and had obtained a medical exemption from Defendant's requirement that all employees receive the flu vaccine. (Id.)

COVID-19." (Id., ¶ 12.)  On the same day, Moorings Park also sent a letter to its residents advising them of possible staffing shortages due to the implementation of its vaccine mandate, and requesting that residents notify Defendant if they consent to care being provided by an unvaccinated person. (Id., ¶ 13.)  Many of the Moorings Parks residents indicated they would provide such consent. (Id., ¶ 14.)

On September 7, 2021, Plaintiff timely submitted the additional information from her physician to Moorings Park in accordance with its request. (Id., ¶¶ 15-16.) On September 16, 2021, Plaintiff contacted Defendant's director of human resources via email because she had not heard anything further in response to her request for an accommodation. (Id., ¶ 17.)  Moorings Park contacted Plaintiff via telephone to inform her that her medical exemption request was denied, stating an accommodation could not be offered since Plaintiff encountered residents during the course of her job. (Id., ¶¶ 18-19.) Although Plaintiff inquired of Defendant about why she could not be accommodated by working from home (as she had done earlier in the pandemic period), Moorings Park did not respond. (Id., ¶ 20.)

Additionally, Plaintiff advised Moorings Park that she had previously contracted and recovered from COVID-19, and thus had greater protection from contracting the virus than that provided by the vaccine. (Id., ¶ 21.)  According to Plaintiff, Defendant

was unwilling to factor her COVID-19 status into their employment and accommodation decisions.  (Id.)

The day after Plaintiff was notified of the denial, Plaintiff requested that Moorings Park issue the denial in writing and sought clarification of the basis for denial.  (Id., ¶ 22.)  In its written response, Moorings Park did not dispute that Plaintiff's medical condition warranted exemption from the vaccine requirement, but stated that an accommodation was not possible because "non-vaccinated partners in [Plaintiff's] position would present a direct threat to residents and partners" and that exempting Plaintiff from the COVID-19 vaccine policy would place an undue burden on Moorings Park. (Id., ¶ 23.)  Defendant gave Plaintiff a choice of either being vaccinated by September 20, 2021 or resign.  (Id.)

On September 19, 2021, Plaintiff submitted a request for religious exemption for the COVID-19 vaccine mandate based on her beliefs as a devout Christian, which was "summarily and hastily denied [on September 20th] without inquiry or exploration of possible reasonable accommodation." (Id., ¶¶ 1, 24-25.) Moorings Park also denied Plaintiff's request that Defendant's religious exemption denial be put in writing. (Id., ¶ 26.)  On September 24, 2021, Plaintiff's direct supervisor met with Plaintiff and advised her that her employment with Moorings Park was being terminated – effective on September 30, 2021. (Id., ¶ 27.)  Plaintiff received

a termination letter dated September 28, 2021, stating she was terminated for "failure to comply with Moorings Park's COVID-19 Vaccination Policy." (Id., ¶ 29.)

On October 7, 2022, Plaintiff filed this action bringing the following five claims against Defendant: (1) Count I — violation of Title I of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; (2) Count II — failure to accommodate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2; (3) Count III — disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2; (4) Count IV — violation of the Florida Civil Rights Act of 1992, § 760.01, Fla. Stat.; and (5) Count V — intentional infliction of emotional distress under Florida law.

Defendant filed its motion, arguing that Count IV of the Complaint – for violation of the Florida Civil Rights Act – is legally barred and should be dismissed, while Count V should be dismissed because it fails to state a claim for intentional infliction of emotional distress. (Doc. #7, p. 2.) Defendant also requests that the Court strike certain paragraphs in Plaintiff's complaint because they are immaterial and scandalous. (Id., p. 9.) The Court will address Defendant's arguments in turn below.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also, Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially

plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

### A. Count IV – Violation of Florida Civil Rights Act of 1992

Count IV of the Complaint alleges that Defendant discriminated against Plaintiff based on her disability and religion in violation of the Florida Civil Rights Act of 1992 (FCRA), § 760.01, Fla. Stat. (Doc. #1, ¶¶ 46-47.)

Defendant argues this claim should be dismissed because Plaintiff failed to exhaust her administrative remedies as required under the FCRA. (Doc. #7, pp. 3-4.) Specifically, Defendant claims that Plaintiff, who received a "no cause determination" from the Florida Commission on Human Relations (FCHR), failed to request an administrative hearing within 35 days of the determination, as required under the FCRA. (<u>Id.</u>) Defendant therefore asserts that Plaintiff's claim under the Act is barred and must be dismissed with prejudice. (<u>Id.</u>, p. 4.)

Plaintiff responds that Defendant's argument is erroneous because the statutory time period – 180 days – in which the FCHR was required to make a determination on Plaintiff's complaint had elapsed, thereby releasing Plaintiff from the requirement of an

administrative hearing. See § 760.11(4)(a), (8), Fla. Stat.  Thus, Plaintiff contends dismissal of Count IV would be improper.  (Doc. #14, p. 2.)

As a jurisdictional prerequisite to filing an FCRA action, Plaintiff must exhaust her administrative remedies by filing a complaint with the FCHR (or the EEOC) within 365 days of the alleged violation. § 760.11, Fla. Stat.; Jones v. Bank of Am., 985 F. Supp. 2d 1320, 1326 (M.D. Fla. 2013)(citing Maggio v. Fla. Dept. of Labor & Employment Sec., 899 So.2d 1074, 1079 (Fla. 2005)). Within 180 days of the filing of the complaint, the FCHR shall determine whether there is reasonable cause to believe that discriminatory conduct has occurred. § 760.11(3), Fla. Stat. If the FCHR determines that no reasonable cause exists, the complaint will be dismissed, and the aggrieved person may request an administrative hearing within 35 days of the date of the determination. § 760.11(7), Fla. Stat.  If the aggrieved party does not request an administrative hearing within 35 days, the claim will be barred. Id.; Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So.2d 891, 894-95 (Fla. 2002).

"In the event that the commission fails to conciliate or determine whether there is reasonable cause on any complaint under [Section 760.11] within 180 days of the filing of the complaint, an aggrieved person may proceed . . . as if the commission determined that there was reasonable cause." § 760.11(8), Fla.

Stat.  Administrative remedies will be deemed exhausted, and the aggrieved person may either bring a civil action against the person or entity named in the complaint in any court of competent jurisdiction, or may request an administrative hearing. § 760.11(4), Fla. Stat.

Here, Plaintiff filed her complaint online with the FCHR on November 15, 2021, alleging that Defendant engaged in unlawful discrimination. The FCHR, however, did not issue its "Notice of Determination: No Reasonable Cause" until May 20, 2022 – 186 days after Plaintiff filed her complaint. (Doc. #7-1.)  Thus, while the FCHR may have found no reasonable cause existed, it did so after the 180-day period had passed, thereby relieving Plaintiff from the condition precedent of an administrative hearing. Plaintiff therefore complied with the applicable conditions precedent to bring this FCRA civil action against Defendant, and Count IV of her Complaint is not legally barred.  Defendant's motion to dismiss is denied as to this claim.

**B. Count V – Intentional Infliction of Emotional Distress**

Count V of the Complaint alleges a cause of action for intentional infliction of emotional distress (IIED) under Florida law against Defendant. (Doc. #1, ¶¶ 48-52.)  Specifically, Plaintiff alleges that:

> 49. Defendant deliberately terminated Plaintiff's employment and denied her requests for medical and religious exemptions despite knowing and previously

9

acknowledging that she had a valid medical reason for not being vaccinated and that her religious beliefs dictating against vaccination are sincere and deeply held.

50. Defendant knew or should have known that this action would cause Plaintiff mental suffering.

51. Moreover, Defendant's discriminatory treatment of Plaintiff and its conclusory assertion of undue hardship without any inquiry or investigation was outrageous conduct under the law.

52. As a result of the trauma of being terminated from her employment for no fault of her own and the feelings of loss and inadequacy for not being able to contribute to the financial support of her young family, Ms. Cala has suffered anxiety, depression and panic attacks. The situation grew so dire that for the first time in her life, Ms. Cala made the difficult decision to take prescribed medication to treat her depression and anxiety.

(Id., ¶¶ 49-52.)

Defendant argues that Plaintiff has not pled any set of facts that gives rise to an IIED claim as the Complaint is devoid of any alleged conduct that is adequately extreme and outrageous. (Doc. #7, p. 5.) The Court agrees.

To prevail on an IIED claim in Florida, Plaintiff must establish each of the following elements: "(1) intentional or reckless conduct (2) that is outrageous in that it is beyond all bounds of decency and utterly intolerable in a civilized community (3) and that causes the victim emotional distress (4) that is severe." Hammer v. Sorensen, 824 F. App'x 689, 694 (11th Cir. 2020) (quoting Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla.

2d DCA 2018) (citations and quotation marks omitted)).  "While there is no definitive example of the type of conduct that constitutes 'outrageous conduct,' Florida law has evidenced a comparatively high standard." Kautz v. Residence Inn by Marriott, LLC, No. 8:14-cv-988-T-24-MAP, 2014 U.S. Dist. LEXIS 124130, at *8 (M.D. Fla. Sep. 5, 2014)(quoting Siam v. Tampa Bay Downs, Inc., 809-cv-163-T-24TBM, 2009 U.S. Dist. LEXIS 31530, 2009 WL 997238, at *4 (M.D. Fla. Apr. 14, 2009)). "Outrageous" conduct has been defined to mean "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 (1965)). "Whether conduct is sufficiently 'outrageous' to state a claim for IIED is a question of law for the Court to decide." Garcia v. Carnival Corp., 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (citing Medina v. United Christian Evangelistic Ass'n, No. 08-22111-CV-Cooke, 2009 U.S. Dist. LEXIS 19515, 2009 WL 653857, at *4 (S.D. Fla. Mar. 9, 2009)); see also Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA 2007).

"Claims of intentional infliction of emotional distress related to employment discrimination cases have been consistently rejected as failing to meet the threshold burden." Martz v. Munroe Reg'l Med. Ctr., Inc., No. 5:06-cv-422-Oc-10GRJ, 2007 U.S. Dist.

LEXIS 49561, at *8 (M.D. Fla. July 9, 2007); see also Kautz, 2014
U.S. Dist. LEXIS 124130, at *8 ("[C]ourts have been very resistant
to find a cause of action for this [IIED] tort in the employment
setting.") Nevertheless, "courts interpreting Florida law have
allowed claims for intentional infliction of emotional distress in
the workplace to go forward, where the claims involve persistent
verbal abuse coupled with repeated offensive physical contact."
Martz, 2007 U.S. Dist. LEXIS 124130, at *8 (citation omitted).

Plaintiff alleges that she was deliberately terminated
because she refused to take the COVID-19 vaccination based on her
medical condition(s) and her sincerely held religious beliefs.
While Defendant's conduct, if true, may be improper and
discriminatory, it is not "beyond all possible bounds of decency."
See, e.g., King v. Bencie, No. 8:17-cv-2982-T-02TGW, 2019 U.S.
Dist. LEXIS 24187, at *15 (M.D. Fla. Feb. 14, 2019) (no IIED where
defendants interfered with plaintiff's consulting practice and
caused a contact and business relationship to be breached);
Williams v. Worldwide Flight Servs. Inc., 877 So. 2d 869, 870 (Fla.
Dist. Ct. App. 2004)(no IIED where there was a pattern of
harassment at work, including (1) supervisor making racial
epithets in front of plaintiff and to others over the work radio,
(2) creating "false disciplinary related incidents" to justify
termination, (3) falsely accusing plaintiff of theft, (4) refusing
to allow plaintiff to work with other African Americans, (5)

repeatedly threatening to terminate plaintiff, and (6) forcing plaintiff to work in "dangerous" conditions); Patterson v. Downtown Med. & Diagnostic Ctr., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994) (holding that plaintiff's termination after assurances to the contrary did not state cause of action because conduct was not sufficiently outrageous). Mundy v. S. Bell Tel. & Tel. Co., 676 F.2d 503, 505-06 (11th Cir. 1982) (per curiam) (threats by supervisor to destroy employee's career, transfers to less desirable jobs, negative and unfair evaluations, and attempts to damage employee's credibility, were not extreme and outrageous). In sum, Plaintiff has not alleged outrageous conduct in support of a plausible IIED claim. Defendant's motion to dismiss Count V is therefore granted.

**III.**

Defendant urges the Court to strike Paragraphs 32 and 33 of the Complaint, which identifies § 381.00317, Fla. Stat. – the Florida law signed by Governor DeSantis in November 2021 that prohibits private employers from enacting COVID-19 mandates for their employees without providing certain exemptions. (Doc. #1, ¶ 32: Doc. #7, p. 8.) Defendant asserts that because the November 2021 law had not been passed when Plaintiff was terminated in September 2021, Plaintiff's allegations should be stricken as immaterial, impertinent, and may confuse the issues. (Id.) Alternatively, Defendant requests that Paragraph 33 of the

Complaint be stricken because Plaintiff's allegation that the Florida law's passage made it "undeniable that [Defendant] was required to grant Plaintiff's request[]" and that Defendant continues to "flout the law," is scandalous as it suggests that Moorings Park disrespects or disregards the law. (Id., p. 10.)

Plaintiff responds that the at-issue paragraphs are related to this controversy and do not contain anything scandalous against Defendant. (Doc. #14, pp. 5-6.)

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "'A motion to strike is a drastic remedy[,]' which is disfavored by the courts." Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir. 1962)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Hutchings v. Fed. Ins. Co., No. 6:08-cv-305-Orl-19KRS, 2008 U.S. Dist. LEXIS 75334, at *5, 2008 WL 4186994 at *2 (M.D. Fla. Sept. 8, 2008). It is not intended to "procure the dismissal of all or part of a complaint." Id. A motion to strike is often denied "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Bank of Am.,

*N.A. v. GREC Homes IX, LLC*, No. 13-21718, 2014 U.S. Dist. LEXIS 8316, at *14 (S.D. Fla. Jan. 23, 2014) (internal quotations and citations omitted).

Having reviewed the Paragraphs (and allegations) at issue, the Court grants Defendant's motion to strike.  Paragraphs 32 and 33 reference Florida law (and Defendant's obligations thereunder) that was not enacted at the time of Defendant's decision to deny Plaintiff's exemption requests and to terminate her employment, and does not apply retroactively.  Therefore, Paragraphs 32 and 33 are immaterial to the claims at hand and may only serve to confuse the issues since they have no bearing on matters related to whether Moorings Park violated the ADA, Title VII, or the FCRA.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss and Motion to Strike (Docs. ##7, 13) is **GRANTED in part and DENIED in part.**

1. Defendant's Motion To Dismiss Count V of the Complaint is **GRANTED**, but the Motion To Dismiss is otherwise **DENIED**. Count V is **dismissed without prejudice.**

2. Defendant's Motion to Strike Paragraphs 32 and 33 of the Complaint is **GRANTED**. Paragraphs 32 and 33 of the Complaint are stricken.

**DONE AND ORDERED** at Fort Myers, Florida, this ___2nd___ day of December, 2022.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of record